[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 291 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 292 
I am of opinion that by the true construction of the provisions of this policy, the use of camphene as a light in stores or warehouses, where such buildings or personal property contained in such buildings are insured, is prohibited. The policy declares that the carrying on of any of the occupations mentioned in the hazardous, extra-hazardous or special rate classes, in the building, or using it for storing or keeping any of the articles enumerated in these classes, shall suspend the operation of the policy for the time, unless such use of the premises shall be specially provided for in the policy, or shall be afterwards agreed to by the company in writing, to be added to or endorsed on the policy. This language, and still more clearly the statement annexed to the enumeration of the hazardous and extra-hazardous occupations and articles, to the effect that a specified additional premium will be required where these more dangerous trades are carried on and such combustible articles are kept, shows that it was not intended to exclude such employments and property from the privilege *Page 293 
of being insured, but only that the insured parties, in respect to them, should pay such additional premium as was deemed adequate to the increased risk; and that the corporation should not be deemed to have assented to take that class of risks, without an express provision to that effect in the contract, or annexed to or endorsed upon it. The theory of the contract is, that without some special language, either in the description of the subject of insurance or otherwise, the policy will prohibit the trades and goods enumerated in the three classes from being kept in the building which is insured or which contains the insured goods; so that the injured party must not only pay the premium exacted for the risk which attaches to his property, but he must see that in the description of the property, or by some provision therein or an endorsement thereon, or in some other way, the contract shall contain a recognition of his right to exercise the more hazardous occupation or to keep the more combustible goods on his premises. The provision, that the premises shall not be used to carry on the enumerated employments, or for the storage or keeping of the enumerated chattels without a special provision to that effect, is a warranty, the breach of which avoids the policy and prevents any claim for indemnity for a loss, though it appear that the fire arose from some other cause quite unconnected with the prohibited employment or article. (Mead v. The Northwestern Ins. Co., 3Seld., 530.)
I have rehearsed these principles, not because they are unfamiliar, but in order to examine the provision directly under consideration in connection with them. Following immediately after the enumeration in the special memorandum is the clause: "Saltpetre, gunpowder and cotton are expressly prohibited from being deposited, stored or kept in any building insured or containing any goods or merchandise insured by this policy, unless by special consent in writing on the policy." The effect of this is to add to the enumeration of articles which must be insured in special terms — *Page 294 
the three articles mentioned. Two of the articles were already enumerated, but for some reason, or without any, they are repeated in this connection. The terms of the clause, however, only suffice to put them in the same category with those before enumerated. Next follows the clause upon which this action depends: "Camphene, spirit gas or burning fluid, when used in stores or warehouses as a light, subjects the goods therein to an additional charge of 10 cents per $100, and premium for such use must be endorsed in writing on the policy." The effect of the language, I think, is to attach the same consequences to the use of these articles in stores and warehouses, which is visited upon the exercise of the hazardous occupations, or the storage of the hazardous goods mentioned in the first classification of subjects which are to be specially insured. The practice is not absolutely prohibited, but it must be paid for; and, moreover, it must be specially recognized by an endorsement on the policy. It seems pretty obvious that inasmuch as the practice of using camphene for a light could not, upon the plan of the instrument, be inserted in the classes of risks, they being devoted to the enumeration of trades and occupations and of particular chattels, a special paragraph was framed to explain that the practice was prohibited under the ordinary policy, but the right to pursue it could be obtained by the payment of a certain premium and having the evidence of the purchase endorsed on the policy. If this is a fair interpretation of the language, there can be no doubt but that the prohibition, like every other positive provision in a policy of insurance, is a warranty, which, if violated, precludes a recovery on the instrument. In Meads v. The NorthwesternInsurance Co., to which I have already referred, the policy seems to have been essentially like the one we are considering, except that the clause respecting camphene is thus: "Camphene cannot be used in the building where insurance is effected, unless by special permission in writing." It was held that *Page 295 
the use of camphene for lighting avoided the policy. The provision is certainly more direct and perspicuous than the one before us, but I cannot doubt but that both mean precisely the same thing, and I think it would be a refinement to establish a distinction between them. The superior court was of opinion that camphene could not be used as a light under this policy, without subjecting the insured to the hazard of any loss which might arise from it. If this is so, it is because the use of it is prohibited in a certain qualified manner. I do not see anything in the language of the instrument to warrant this construction. If prohibited at all, the usual consequences follow from its use, that is to say, that the insured will be precluded from recovery for any loss on account of violating a warranty.
If an article enumerated in the list of hazardous articles is stored or kept in the building, and there is a loss by fire, the insurers are not liable, though the fire had no connection with the hazardous property; but the insured may avoid such consequences by paying the extra premium and procuring a proper endorsement on the policy. The clause under consideration declares that the use of camphene as a light subjects the insured to a certain extra premium, and that an endorsement of the payment of the premium must be made on the policy. But it does not say, except by implication, that camphene may not be used without such payment or without an endorsement; but the implication is nearly as strong as though the language had been express and positive. I do not think we are at liberty to read it as though the use of the article was permitted.
The judgment of the superior court should be reversed and a new trial ordered.
All the judges concurred.
Judgment accordingly. *Page 296